UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSHUA TAFT,

                        Plaintiff,                     22-CV-6279-FPG

v.

                                         DECISION AND ORDER
RICK WHITNEY, et al.,

                        Defendants.

## INTRODUCTION

*Pro se* Plaintiff Joshua Taft brings this civil-rights action related to his employment at, and separation from, the Allegany County Sheriff's Office.  ECF No. 1.  Currently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint.[1]  ECF No. 36.  For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 678.  In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual

---

[1] Defendants are Rick Whitney (Allegany County Sheriff), Harold Budinger (Allegany County Personnel Officer), Christopher Ivers (Allegany County Jail Administrator), Andrew Bigelow (Allegany County Sheriff's Lieutenant), Kevin Morsman (Allegany County Assistant Jail Administrator), Craig Cornell (Allegany County Corrections Sergeant), Kimberly Reynolds (Allegany County Corrections Sergeant), Andrew Keiser (Allegany County Corrections Sergeant), Matthew Tronetti (Allegany County Corrections Corporal), and Kimberly Francisco (Allegany County Deputy Personnel Officer).  Defendants are sued in their individual and official capacities.  ECF No. 30 at 1-3.

allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint, unless otherwise noted. Plaintiff became a full-time correctional officer with the Allegany County Sheriff's Office on October 17, 2012. ECF No. 30 at 5. During his employment, he was represented by a union, the American Federation of State, County, and Municipal Employees (AFSCME) Local 82. *Id.*

In January 2020, Plaintiff decided to opt out of his union. To do so, Plaintiff used a private entity—New Choice NY—to process his withdrawal from the union. *See* ECF No. 30 at 7, 82-83. Plaintiff completed an "opt-out" application through New Choice NY's website on January 20, 2020. ECF No. 30 at 82. According to Plaintiff, the County did not respond.[2] Plaintiff submitted another application through New Choice NY on February 3, 2020. *Id.* at 83. Plaintiff alleges that, again, the County did not respond. *Id.* at 7.

In January 2021, Plaintiff sent a letter to the County payroll office informing it that he was resigning from the union and directing that it cease the deduction of union dues. ECF No. 30 at 7.[3] It appears that the automatic dues deduction ceased as of January 11, 2021, ECF No. 40 at 9, and Plaintiff's union membership was formally revoked as of February 23, 2021. ECF No. 30 at 100.

At some point, Plaintiff came to believe that his time-off requests "were being manipulated" in order to make it more difficult for other employees to cover his shifts. *Id.* at 8.

---

[2] Defendants have submitting evidence showing that on January 21, 2020, Plaintiff contacted the County to "retract[] [his] letter of withdrawal." ECF No. 24-3 at 2. Because the Court may not "look beyond the four corners of the complaint in [analyzing] a motion to dismiss," it does not consider this evidence. *Mayo v. Fed. Government*, 558 F. App'x 55, 56 (2d Cir. 2014) (summary order).

[3] Although Plaintiff alleges that he submitted this letter on January 10, 2021, ECF No. 30 at 7, the document he attaches is dated January 20, 2020. *Id.* at 84. Regardless, Plaintiff's amended complaint and opposition memorandum only reference that January 10, 2021 letter. ECF No. 30 at 7; ECF No. 40 at 9. The Court will do the same.

Specifically, he alleges that the supervisors tasked with initiating his requests in the electronic system, including Cornell, Reynolds, and Tronetti, refused to do so, thus ensuring that his time-off requests were not seen or covered by others.  *See* ECF No. 30 at 8, 97. Plaintiff complained to Cornell, Reynolds, and Tronetti, along with other shift supervisors, but they refused to remediate the issue because Plaintiff was no longer a member of the union.  *Id.* at 8, 97-100.  On June 5, 2021, Plaintiff notified Whitney and Ivers about this issue, but did not receive a response.  *Id.* at 97, 108.

Plaintiff alleges that on June 7, 2021, Cornell and Sergeant Andy Keiser conspired to falsely accuse him of leaving his shift early.  ECF No. 30 at 14, 128-29.  These accusations were made in memoranda submitted by Cornell and Keiser to the jail administration.  *See id.* at 128-29. The amended complaint does not disclose what disciplinary action, if any, was taken for these accusations.

On July 23, 2021, while Plaintiff was working, Sergeant Andy Keiser falsely accused Plaintiff of "intentionally holding up [the] headcount" of the inmates.  *Id.* at 10.  Just before the end of his shift, Reynolds informed Plaintiff that Ivers wanted to see him before he left.  Ivers told Plaintiff that he had heard from others that Plaintiff had been intentionally holding up the headcount on shifts.  *Id.* at 110.  Plaintiff denies this accusation.

On August 1, 2021, at the start of his shift, Plaintiff attempted to call the headcount, but learned from Reynolds that another officer had already called it in.  Plaintiff alleges that this was a "clear violation of department procedures."  ECF No. 30 at 11.   Furthermore, Plaintiff alleges that he was "yelled at" by an unnamed shift supervisor for an unidentified "rumor."  *Id.*

Later in the shift, Plaintiff confronted Cornell and asked whether the officer's violation would be reported.  Cornell replied that it was not necessary to report the violation but that he would speak to the officer.  Because of the violation, the rumor, and the issues with his time-off,

Plaintiff "became extremely upset." *Id.* He asked Cornell whether he could go home early. Cornell granted the request and directed Deputy Chauncey Weaver to fill in. Before he left, Plaintiff met with Cornell in his office. He explained why he was leaving, stating "he was done dealing with this place because of being subjected to the harassment and false accusations by this department and was going home." *Id.* at 12. While Plaintiff claims that he only intended to leave his shift early, Cornell falsely reported to Ivers and Whitney that Plaintiff had quit. ECF No. 30 at 115.

On August 2, 2021, Plaintiff met with Whitney and Morsman. ECF No. 30 at 118-21. During that conversation, Whitney accused Plaintiff of either quitting or abandoning his post, which would justify his termination. When Plaintiff refused Whitney's suggestion that he submit his resignation, Whitney told Plaintiff that he would be suspended without pay pending an investigation.

After the meeting, Plaintiff contacted the County's personnel officer, Harold Budinger, who informed him that an investigation would occur and that an investigator would reach out to him. ECF No. 30 at 13. On August 3, 2021, Ivers notified Plaintiff via phone than an interview would be scheduled for August 5, 2021. That day, Plaintiff filed a claim for unemployment insurance benefits. ECF No. 30 at 135.

On August 4, 2021, Ivers called Plaintiff and left a voicemail. He informed Plaintiff that the interview was cancelled. On the same day, Ivers submitted a memorandum to Whitney in which he provided a summary of his investigation, which consisted of interviews with Cornell and Reynolds. Ivers relayed that Plaintiff informed Cornell that he was "done with this place" and "would never be coming back." ECF No. 30 at 131. Plaintiff gave Cornell his radio and ID badge before leaving. *Id.* Ivers told Whitney that, based on this information, it was his belief that Plaintiff "resigned his position on Sunday Morning August 1, 2021." *Id.*

On August 6, 2021, Plaintiff received a letter from the County indicating that his health benefits were to be terminated as of August 31, 2021, "and the reason given was 'End of Employment.'" ECF No. 30 at 14. Plaintiff contacted Francisco, the deputy personnel officer at the County, for clarification. Francisco indicated that Budinger had received notice from the Sheriff's Department that Plaintiff had been terminated. ECF No. 30 at 123. That day, Francisco sent a notice to the New York Department of Labor contesting Plaintiff's claim for unemployment insurance benefits, stating that he had voluntarily quit. ECF No. 30 at 135.

On August 10, 2021, Plaintiff spoke with Ivers by phone. ECF No. 30 at 125. Ivers told Plaintiff that, based on Cornell's version of events, it was his position that Plaintiff had quit on August 1, 2021. *Id.* Plaintiff again disputed Cornell's account, but Ivers maintained that Plaintiff had quit. *Id.*

In June 2022, Plaintiff brought the present action. ECF No. 1. In his amended complaint, Plaintiff raises eight claims, largely under 42 U.S.C. § 1983. First, Plaintiff alleges that Allegany County and Budinger violated his right to free association for the failure to stop the withdrawal of his union dues after January 2020.[4] ECF No. 30 at 15; ECF No. 40 at 6. Second, Plaintiff alleges that the County, Whitney, Budinger, and Ivers terminated him for being a non-member of the union, in violation of his First Amendment rights. ECF No. 40 at 6. Third, Plaintiff claims that Ivers, Cornell, Keiser, Reynolds, and Tronetti violated his First Amendment rights through "the denial of time off, ostracization, falsified documents, harassment and causing a hostile work environment towards Plaintiff." *Id.* Fourth, Plaintiff claims that the County, Budinger, and

---

[4] In his opposition memorandum, Plaintiff references Allegany County as one of the relevant defendants. Although Plaintiff did not identify the County as a defendant in his amended complaint, *see* ECF No. 30 at 1-3, Plaintiff did sue every defendant in their official capacity. The official-capacity claims are treated as claims against Allegany County. *See Farnsworth v. City of Geneva*, No. 20-CV-6935, 2022 WL 1539541, at *2 (W.D.N.Y. May 16, 2022) ("Claims against county officials in their official capacities are treated as claims against the county itself."). Therefore, for ease of reference, the Court will refer to the "County" as the relevant defendant. Should Plaintiff file a second amended complaint, he may formally seek to add Allegany County as a defendant.

Whitney violated New York Civil Service Law § 75 by terminating him without the necessary statutory process.  Fifth, Plaintiff alleges violation of his procedural-due-process rights to due process by the County, Whitney, and Budinger.  Sixth, Plaintiff claims that the County, Whitney, and Budinger violated his equal-protection rights.  Seventh, Plaintiff claims that all of the defendants violated 42 U.S.C. § 1985(3).  Eighth, Plaintiff claims that all of the defendants violated 42 U.S.C. § 1986.

## DISCUSSION

Defendants move to dismiss all of Plaintiff's claims.  The Court analyzes each claim in turn.

### I.  Service on Keiser

Defendants observe that personal service has not been effected on Keiser, and they request dismissal on that basis.  ECF No. 36-1 at 27-28.  Defendants raise no argument that an extension of time to effectuate service under Rule 4(m) would be improper, however.  Because Plaintiff is proceeding *in forma pauperis* and is entitled to rely on the United States Marshals Service for service, the Court finds good cause to extend the time limit for service.  *See Garrett v. Wolffer Estate Vineyard, Inc.*, No. 19-CV-6101, 2022 WL 17555178, at *3 (E.D.N.Y. Dec. 9, 2022).  As set forth below, the Court directs that service be effectuated with respect to Keiser.

### II.  Violation of Section 75

Plaintiff alleges that the County, Whitney, and Budinger violated New York Civil Service Law § 75 when they terminated him.  That provision provides that a person holding a permanent, competitive appointment may not be removed "except for incompetency or misconduct shown after a hearing upon stated charges."  N.Y. Civ. Serv. L. § 75(1).  Under Section 75, an employee is entitled to notice of the charges and a hearing at which the employer bears the burden of proof.  *Id.* § 75(2).  The hearing is held before the "the officer or body having the power to remove the

6

person," *id.*, and an adverse determination may be appealed to "the state or municipal commission having jurisdiction, or by an application to the court in accordance with the provisions of article seventy-eight of the civil practice law and rules." *Id.* § 76(1).

Defendants argue that there is no private right of action for violation of Section 75.  ECF No. 36-1 at 23.  The Court agrees.  *Accord Silverman v. City of New York*, No. 98-CV-6277, 2001 WL 218943, at *11 (E.D.N.Y. Feb. 2, 2001); *Santiago v. C.O. Compisi Shield #4592*, No. 97-CV-418, 2000 WL 565198, at *1 (S.D.N.Y. May 8, 2000).  Plaintiff's Section 75 claim must be dismissed.

**III.   Refusal to Stop Deduction of Union Dues**

In *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), the Supreme Court held that, under the First Amendment, "[s]tates and public-sector unions [may not] extract agency fees from nonconsenting employees."  *Janus*, 138 S. Ct. at 2486.  The court wrote that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay."  *Id.*

As the Court understands Plaintiff's allegations, Plaintiff had been registered as a member of the union and had signed the "dues deduction authorization card[]" that permitted the union to deduct dues from his paychecks.  N.Y. Civ. Serv. L. § 208(1)(b); *see also* ECF No. 30 at 7.  In January 2020, when he became unsatisfied with his union's representation, Plaintiff decided to revoke his union membership.  *See* ECF No. 30 at 7.  Plaintiff alleges a First Amendment violation based on the continued deduction of union dues from his paychecks after he submitted the applications through New Choice NY in January and February 2020.  *Id.* at 7, 82-84.

Plaintiff fails to state a claim for relief.  To explain why, the Court must clarify the impact of *Janus*.  That case concerned the "free speech rights of *nonmembers*" who were "force[d] to

subsidize a union," not the free speech rights of employees who voluntarily became members. *Janus*, 138 S. Ct. at 2459-60 (emphasis added). In New York, membership in a public-sector union—and the rights and responsibilities flowing therefrom—is ordinarily treated as a private arrangement between the public employee and the union, rather than as one imbued with a governmental character. *See Wheatley v. N.Y.S. United Teachers*, 629 F. Supp. 3d 18, 28 (N.D.N.Y. 2022); *cf. Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (noting that public-sector "[l]abor unions such as CSEA generally are not state actors"); *Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (sanctions imposed on union members under union constitution was not "state action"). With respect to dues, public employers like Allegany County are only involved incidentally in the member's private agreement to pay dues to the union. Once a union presents "dues deduction authorization cards signed by individual employees," a public employer must "deduct from the salary of a public employee an amount for the payment of his or her dues." N.Y. Civ. Serv. L. § 208(1)(b). In other words, the County's involvement is limited to "ministerial processing of payroll deductions pursuant to [e]mployees' authorizations." *Belgau v. Inslee*, 975 F.3d 940, 947 (9th Cir. 2020); *Kumpf*, 2022 WL 17155847, at *8; *see also Oliver v. Serv. Emps. Int'l Union Local 668*, 415 F. Supp. 3d 602, 611-12 (E.D. Pa. 2019) ("The union's right to collect the dues is not created by the [state]; it is created by the union's contract with its members. The [state's] role as employer role is strictly ministerial, implementing the instructions of the employee.").

In this case, if Plaintiff wished to terminate his membership in the union—and thereby end the deduction of dues from his paychecks—he was required to do so in accordance with the terms of the authorization card, or other membership agreement, that he had executed with the union. *See* N.Y. Civ. Serv. L. § 208(1)(b)(i) (stating that a dues deduction remains in place until the "individual employee revokes membership in the employee organization in writing in accordance

with the terms of the signed authorization"); ECF No. 30 at 27 (copy of collective bargaining agreement) (stating that "[r]evocation of authorization cards shall be subject to conditions contained thereon").  Plaintiff merely alleges that in January 2020 and February 2020, he submitted an "opt-out" application through a third-party service.  ECF No. 30 at 7, 82-84.  Plaintiff fails to allege that he properly notified the *union* in the manner required by his authorization card (or other union-membership agreement).   Furthermore, there is no allegation that either the third-party service furnished the union with Plaintiff's withdrawal request, or that such a request would have been permissible under his authorization card or other membership agreement.

Absent such allegations, the Court cannot conclude that the County or Budinger acted in violation of the First Amendment when they continued to deduct dues from Plaintiff's paychecks after January 2020 until Plaintiff's formal withdrawal from the union.  In *Wheatley v. New York State United Teachers*, 80 F.4th 386 (2d Cir. 2023), the Second Circuit noted that an employee's "signing of [a union] Membership Agreement constitutes an affirmative consent to pay dues." *Wheatley*, 80 F.4th at 391.  Therefore, Plaintiff was required to honor his agreement with the union to pay dues via deduction until he properly revoked that authorization in accordance with the terms of the authorization card (or other membership agreement).  Plaintiff's First Amendment rights do not "provide a right to disregard" that promise.  *Id.* (internal quotation marks omitted).  Plaintiff's claim must be dismissed for failure to state a claim.

## IV.   Harassment After Withdrawal from Union

Plaintiff alleges that, after he withdrew from the union, Ivers, Cornell, Keiser, Reynolds, and Tronetti caused a "hostile work environment" by denying his time-off requests, ostracizing him, falsifying documents, and otherwise harassing him.  ECF No. 40 at 6.  Defendants argue that this claim fails because Plaintiff has not alleged constitutionally protected activity and that they

are entitled to qualified immunity.[5]  ECF No. 36-1 at 16, 18-19.  They further contend that there are no facts to support liability against Tronetti or Reynolds.  *Id.* at 28.  The Court is not persuaded by Defendants' arguments.

Defendants analyze Plaintiff's claim in terms of the *Pickering* test, which takes its name from the case of *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968).  "To make out a prima facie case of First Amendment retaliation, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022).  To determine whether a public employee's speech is protected, a court applies the *Pickering* test, which poses "two questions[:] . . . (1) whether the employee's speech as a citizen was on a matter of public concern, and if so, (2) whether the employer has shown that the employee's interest in expressing himself on that matter is outweighed by injury that the speech could cause to the employer's operations."  *Piscottano v. Murphy*, 511 F.3d 247, 269-70 (2d Cir. 2007).  Defendants contend that Plaintiff's "voicing [of] his intent to withdraw from the Union" does not "relate to a matter of public concern" and thus cannot meet this standard. ECF No. 36-1 at 16.

Absent more developed argument from Defendants, the Court is not convinced that *Pickering* is the correct rubric under which to analyze Plaintiff's claim.  In *State Employees Bargaining Agent Coalition v. Rowland*, 718 F.3d 126 (2d Cir. 2013), the Second Circuit declined to apply *Pickering* in a dispute over whether state officials had discriminatorily laid off union members when reducing the state's workforce.  *Rowland*, 718 F.3d at 129.  The court noted that

---

[5] To the extent Defendants argue there is an insufficiently alleged causal connection between Plaintiff's non-association with the union and the alleged harassment he suffered, their argument fails for the reasons discussed in Section V, *infra*.

the right to free association protects the rights of public employees "to associate in unions." *Id.* at 132.   Relying on the Supreme Court's precedents with respect to political association, the court held that "[c]onditioning public employment on union membership . . . inhibits protected association and interferes with government employees' freedom to associate." *Id.* at 133.   The government's decision to target public employees based on union membership is "therefore subject to [] strict scrutiny, and may be done only in the most compelling circumstances." *Id.* (internal quotation marks omitted).   The Second Circuit held that this requirement "applies to employment decisions based on union membership." *Id.* at 134.   The court declined to analyze the claim under *Pickering*, reasoning that the dispute was over whether the plaintiffs "could be retaliated against based on their union affiliation (or non-affiliation), not whether they could be retaliated against based on any protected speech." *Id.* at 136 n.13 (internal quotation marks and brackets omitted); *see also Morin v. Tormey*, 626 F.3d 40, 44 (2d Cir. 2010) (where plaintiff alleged that she was subjected to various adverse employment actions after she refused to participate in partisan political activities—including denial of requests for supplies, reassignment to unfavorable assignments, transfer to a basement office, and forced demotion—*Pickering* was not proper standard to apply).

In a similar vein, Plaintiff is presenting a "targeting" theory, rather than one grounded in any speech.   Absent more developed argument as to why Plaintiff must satisfy *Pickering*'s "public concern" requirement, the Court does not find Defendants' argument persuasive and declines to dismiss the claim on that basis.[6]   Consequently, Defendants' claim of qualified immunity—on the basis that none of the defendants could have known Plaintiff's non-union membership was "a matter of public concern," ECF No. 36-1 at 19—fails.

---

[6] Defendants are free to develop their argument more fully, if they wish to do so, and renew it at the appropriate juncture.

As for Tronetti's and Reynolds's personal involvement, it is now settled that to be held liable under Section 1983 for violation of a plaintiff's constitutional rights, the plaintiff must "directly plead and prove that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (internal quotation marks omitted and emphasis added).   Defendants contend that Plaintiff has failed to allege any link between Tronetti and Reynolds and the "alleged retaliatory employment action[s] he experienced as a result of leaving the [u]nion."  ECF No. 36-1 at 28.

The Court is not persuaded.  Defendants' argument is premised on a less favorable interpretation of Plaintiff's allegations.  Viewing the facts in the light most favorable to Plaintiff, and in light of his *pro se* status, the Court construes the amended complaint to allege that both Reynold and Tronetti, as his supervisors, had a duty to deploy his time-off requests and refused to do so because he had left the union.  *See* ECF No. 30 at 8-9, 97-100.   While Defendants may be correct that the documentary evidence that Plaintiff proffers suggests a more benign explanation than what Plaintiff alleges, *see* ECF No. 36-1 at 28, this Court may not weigh the evidence in addressing the sufficiency of Plaintiff's amended complaint.  *See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) ("The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (internal quotation marks omitted)).  At this stage, Plaintiff's allegations are sufficient to allege Reynolds's and Tronetti's personal involvement.[7]

---

[7] Throughout their motion, Defendants rely on less favorable interpretations of Plaintiff's allegations to argue that dismissal of the complaint is appropriate.  For example, Defendants contend that Whitney and Ivers reasonably concluded that Plaintiff voluntarily quit and are therefore entitled to qualified immunity.  *See* ECF No. 36-1 at 21. Because such arguments are inconsistent with the relevant standard of review, they are rejected without further comment.

Therefore, Plaintiff's claim of First Amendment retaliation against Ivers, Cornell, Keiser, Reynolds, and Tronetti will not be dismissed.

## V.  Sham Resignation

Plaintiff alleges that the County, Whitney, Budinger, and Ivers pretextually treated his conduct on August 1, 2021 as a resignation, and did so in retaliation for his withdrawal from the union.  Defendants contend that Plaintiff has failed to sufficiently establish a causal connection between his non-union membership and his termination.[8]  ECF No. 36-1 at 16-17.  Defendants also assert that Plaintiff has failed to state a claim against Budinger or the County.  *Id.* at 11-12, 29.

"To establish causation [in the context of a First Amendment retaliation claim], a plaintiff must show that his protected activity was a substantial motivating factor in the adverse employment decision." *Bierce v. Town of Fishkill*, 656 F. App'x 550, 552 (2d Cir. 2016) (summary order) (internal quotation marks omitted).  "This may be done either directly, by evidence of retaliatory animus, or indirectly, by circumstantial evidence, such as by showing that the protected activity was closely followed in time by the adverse employment decision." *Id.*  There is no "bright line defining the outer limits beyond which causation based on temporal proximity may be established." *Id.*  A court must consider the temporal proximity "in light of the [surrounding] circumstances." *Morrow v. Bauersfeld*, No. 21-2928, 2022 WL 17097590, at *2 (2d Cir. 2022).

In this case, Plaintiff's putative resignation occurred less than six months after he formally withdrew from the union.  While it is debatable whether that timespan would permit an inference of causation standing alone, *see Housel v. RIT*, 6 F. Supp. 3d 294, 308 (W.D.N.Y. 2014) (collecting cases and noting that "claims of retaliation are routinely dismissed when as few as three months

---

[8] Defendants also argue that Plaintiff has not established that his non-union membership was a matter of public concern, and that they are entitled to qualified immunity for the same reason.  *See* ECF No. 36-1 at 16, 19.  For the reasons stated in Section IV, *supra*, those arguments are rejected.

elapse between the protected activity and the alleged act of retaliation"), there are additional allegations that bolster the existence of a causal connection.

First, Plaintiff's non-union membership became a point of contention among Plaintiff's supervisors. Less than one month after he withdrew from the union, Plaintiff sought assistance from several of his supervisors regarding his time-off requests. They refused to assist him, explicitly citing his non-union membership. ECF No. 30 at 8-9, 97-100. Plaintiff plausibly alleges that these actions were an attempt by his supervisors to ostracize him for his withdrawal from the union. Both Whitney and Ivers were aware of these issues and took no steps to rectify them. *See Id.* at 97. Second, the circumstances surrounding Plaintiff's termination were unusual. Initially, Whitney indicated that there would be a formal investigation and that Plaintiff could be terminated for abandoning his post. ECF No. 30 at 119. No investigation ensued, however, and Plaintiff was subsequently informed that he would be treated as having quit his job. *Id.* at 125. This action could be viewed as suspicious, insofar as it allowed Defendants to avoid the procedural protections to which Plaintiff was otherwise entitled under Section 75. Because Defendants could plausibly rely on Plaintiff's own conduct to argue that he quit, the incident on August 1, 2021 was the first opportunity that Defendants had to end Plaintiff's employment without inviting scrutiny of their actions. *Cf. Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (close temporal relationship between protected activity and adverse action may support causal connection where "the adverse action occurred at the first actual opportunity to retaliate").

Accordingly, the Court concludes that Plaintiff has plausibly alleged a causal connection between his non-union membership and the sham resignation. This claim will not be dismissed on that basis.

However, the Court will dismiss this claim to the extent it is asserted against Budinger or the County. As to Budinger, Plaintiff has failed to show that Budinger, "through [his] own

individual actions," retaliated against Plaintiff for his non-union membership. *Tangreti*, 983 F.3d at 612. Plaintiff alleges that, after his suspension, Budinger explained the disciplinary process to him, ECF No. 30 at 13, and on August 6, 2021, he terminated Plaintiff's health benefits after the Sheriff's Office informed him that Plaintiff had been terminated. ECF No. 30 at 14, 123. Given that Budinger was only involved in various ministerial tasks related to the dispute over Plaintiff's employment, and because Plaintiff does not allege that Budinger was involved in, or even aware of, the harassment Plaintiff suffered after February 2021, Plaintiff has failed to plausibly allege that Budinger took the actions that he did in retaliation for Plaintiff's non-union membership. *See Enders v. Boone*, 658 F. Supp. 3d 70, 91 (N.D.N.Y. 2023) (at summary judgment, concluding that plaintiff had failed to establish First Amendment retaliation claim against human-resources official, where official's participation in plaintiff's termination was limited to "drafting a standard termination letter" and "serving as a witness to [p]laintiff's termination").

In addition, Plaintiff has failed to sufficiently allege a claim against the County. "To prevail on a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights." *Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011). "A municipality may not be held liable under § 1983 on the basis of respondeat superior." *Id.* "A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted). "To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *Id.* at 95 (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases). Put simply, to allege "there is a policy does not make it so." *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016).

Plaintiff does not allege that any formal county policy caused his constitutional injury. Rather, he contends that the County may be held liable for Whitney's and Budinger's actions because they occupied "policy-maker positions for Allegany County." ECF No. 40 at 6. With respect to Budinger, this argument fails because, even if Budinger is a final policymaker with respect to personnel decisions, Plaintiff has not alleged Budinger's personal involvement in the unconstitutional action. At most, Plaintiff alleges that Budinger went along with Whitney's impermissible decision to treat Plaintiff's conduct as a resignation. That is insufficient to attribute Whitney's conduct to Budinger or to the County. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy."); *see also Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 100 (2d Cir. 2020) (principal's allegedly retaliatory actions could not be attributed to the municipality, even assuming that the principal's decisions were unreviewable, since a municipality may only be held liable if its "*deliberate* conduct" was a "moving force" behind the constitutional violation).

16

As to Whitney's conduct, Plaintiff has failed to make any nonconclusory allegation that Whitney has final policymaking authority with respect to discipline.  As a civil-service employee covered by a collective bargaining agreement, Plaintiff was subject to the County's rules and the agreement's terms regarding discipline.  *See* ECF No. 30 at 26 (copy of collective bargaining agreement stating that Allegany County is the employer for purposes of the collective bargaining agreement); ECF No. 40 at 18-19 (copy of County's Rules for the Classified Civil Service).  Those policies, "rather than [Whitney's] departures from them, are the act[s] of the [County]." *Praprotnik*, 485 U.S. at 127; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 n.12 (1986) ("[I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability.  This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board."); *Jeffes v. Barnes*, 208 F.3d 49, 59, 60 (2d Cir. 2000) (agreeing that, since county-jail employees are part of New York's civil-service system, a sheriff would "not [be] the final policymaker for purposes of § 1983 analysis" if employees at the jail were suing over "unwarranted formal discipline").

Therefore, this claim survives except insofar as it is alleged against the County and Budinger.

## VI.   Procedural Due Process

Plaintiff alleges that the County, Whitney, and Budinger violated his due-process rights by subjecting him to an involuntary resignation without affording him the pre-termination procedural protections set forth in Section 75.  ECF No. 40 at 6.  Defendants argue that this claim should be dismissed because Plaintiff received all the process he was due under the circumstances.  ECF No.

36-1 at 22-23.  The Court agrees with Defendants' conclusion, but for a different reason than the one they articulate.

The case of *Giglio v. Dunn*, 732 F.2d 1133 (2d Cir. 1984), is analogous to the present case and precludes Plaintiff's due-process claim.  In *Giglio*, a tenured high school principal alleged that he had been coerced to resign his position and that he had been "denied due process because a hearing did not precede the coercion." 732 F.3d at 1134.  The Second Circuit held that the principal was not entitled to a pre-resignation hearing, as it would be "impractical." *Id.* at 1135.  The court wrote that "it is hard to visualize what sort of prior hearing the Constitution would require the employer to conduct" in the case of a resignation.  *Id.*  "If there is no factual dispute between the employer and the employee, a hearing is meaningless." *Id.*  "When an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." *Id.*  Under such circumstances, a post-resignation hearing would be adequate.  In New York, a public employee has an adequate remedy of post-resignation due process in the form of an Article 78 proceeding, which allows a public employee to challenge a claimed resignation as involuntary.  *See id.*; *see also, e.g.*, *Willis v. VonHolden*, 413 N.Y.S.2d 47, 48 (4th Dep't 1979).  Therefore, the principal failed to state a claim for violation of his procedural due process rights based on the lack of a pre-deprivation hearing.

The Court sees no material difference between the coerced resignation in *Giglio* and the sham resignation in Plaintiff's case.  Plaintiff admits that, on August 1, 2021, he was in an "emotionally distraught state" and asked to be "relieved to go home." ECF No. 30 at 16.  He disputes that he resigned at that time, however, and he alleges that Defendants were aware that he had not resigned and used the circumstances as a pretext to terminate his employment.  *Id.*  Even if true, *Giglio* counsels that in the case of a putative resignation, the employee's post-deprivation

remedy of an Article 78 proceeding is sufficient to contest the resignation, even if he fails to avail himself of the opportunity. *See Giglio*, 732 F.2d at 1135.

One could object to this conclusion on the ground that it incentivizes mischief: an employer could avoid the necessity of a pre-termination hearing simply by deeming an employee as having resigned. *Cf. Dwyer v. Regan*, 777 F.2d 825, 831 (2d Cir. 1985) (cautioning that public employers "may not avoid [their] obligation to provide a pretermination hearing by engaging in sham or pretextual conduct"). And, at least where the employer is intentionally manufacturing the employee's resignation, it would seem that there would be a sufficient opportunity to hold a pre-deprivation hearing before accepting a sham resignation. This was the very objection lodged in the dissenting opinion in *Giglio*, however, which the majority rejected. *See Giglio*, 732 F.2d at 1137 (Cardamone, J., dissenting) (arguing that a "pre-deprivation hearing was viable" because the superintendents engaged in intentional acts to coerce the principal's resignation, and noting that the majority's holding permit state actors to "effectively to avoid due process requirements by intentionally coercing tenured employees into resigning, rather than by firing them outright"). The Second Circuit has continued to apply *Giglio* even in circumstances where a higher-level decisionmaker was involved in procuring the resignation and, thus, could have interposed a hearing prior to accepting the resignation. *See, e.g.*, *Capul v. City of New York*, 832 F. App'x 766 (2d Cir. 2021) (summary order) (where former police officers alleged that police commissioner coerced their resignations, applying *Giglio* and concluding that "post-termination process" sufficed to satisfy "the due process requirements of the Fourteenth Amendment"); *Jaeger v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 125 F.3d 844 (2d Cir. 1997) (table op.) (in a case where superintendent alleged that the board of education coerced his resignation, rejecting the argument that the board was required to show that "a *pre*-deprivation hearing was impossible").

Accordingly, the Court concludes that Plaintiff's procedural due process claim fails as a matter of law and must be dismissed.

## VII.    Equal Protection

Plaintiff alleges that the County, Whitney, and Budinger violated his equal protection rights.  ECF No. 40 at 6.  Defendants argue that this claim must be dismissed because Plaintiff does not allege that he is a member of a protected class and that any "class-of-one" claim is barred in this context.  ECF No. 36-1 at 24-25.  The Court agrees.

Because Plaintiff does not allege that he was singled out "on the basis of race, sex, national origin, or [any] other protected classification,"[9] *Conyers v. Rossides*, 558 F.3d 137, 151 (2d Cir. 2009), he seems to be relying on a "class-of-one" theory, where a plaintiff "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010).  However, "in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008)," the Supreme Court "reject[ed] this theory" in the public employment context.  *Conyers*, 558 F.3d at 152.  The court held that the "traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context."  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).

Accordingly, Plaintiff's equal-protection claim fails and must be dismissed.[10]  *Accord Miller v. N.Y.C. Dep't of Educ.*, 622 F. App'x 38, 39 (2d Cir. 2015) (summary order) (rejecting

---

[9] Union membership is not a "protected class for purposes of equal protection analysis."  *East Amherst Plumbing, Inc. v. Thompson*, No. 12-CV-195, 2013 WL 5442263, at *4 n.1 (W.D.N.Y. Sept. 27, 2013).

[10] Furthermore, insofar as Plaintiff's First Amendment claims rest on the same allegedly irrational and unfair treatment as his equal protection claim – specifically, his non-union membership – the equal protection claim is properly dismissed as duplicative.

plaintiff's claim that he was "unfairly singled out for discipline" as compared to "other teachers who were similarly situated").

## VIII.    Section 1985(3)

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (internal quotation marks omitted). "The conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (internal quotation marks omitted). Defendants argue, and the Court agrees, that non-union membership is not a class covered under Section 1985(3). *See Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 136-37 (E.D.N.Y. 2011). Plaintiff's Section 1985(3) claim is dismissed.

## IX.    Section 1986

As Defendants argue, Plaintiff's failure to state a claim under Section 1985 mandates the dismissal of his Section 1986 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (stating that "a § 1986 claim must be predicated on a valid § 1985 claim").

## X.    Motion to Expedite (ECF No. 42)

Plaintiff requests that "this civil action [] be expedited," alleging that he is suffering significant financial harm and that his family home is now the subject of foreclosure proceedings. ECF No. 42 at 1. To the extent Plaintiff seeks to have Defendants' motion to dismiss resolved on an expedited basis, Plaintiff's request is denied as moot. To the extent Plaintiff desires to have

future proceedings occur on an expedited basis, including discovery, he may direct his request to the magistrate judge once one is assigned.[11]

Ordinarily, the Court would be inclined to grant Plaintiff leave to amend, since it has dismissed several of his claims. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("A pro se complaint should not be dismissed without [ ] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). However, because Plaintiff has expressed concern about further delays in this matter, and given that Plaintiff's action will proceed to discovery regardless of whether he chooses to amend, the Court concludes that the better course is to refer this matter to a magistrate judge immediately. This will ensure that discovery can proceed in a timely fashion. After the magistrate judge issues a scheduling order and discovery begins, Plaintiff is free to request leave to amend his complaint to provide additional facts, if they exist, to support his *Janus* and First Amendment claims against Budinger and Allegany County. Plaintiff may not seek leave to replead his equal-protection, due-process, Section 1985(3), Section 1986, and Section 75 claims, as those claims fail as a matter of law. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (a request to replead may be denied where the "problem with [the plaintiff's] causes of action [are] substantive").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 36) is GRANTED IN PART and DENIED IN PART. Plaintiff's motion to expedite (ECF No. 42) is DENIED AS MOOT. The following claims survive: (1) Plaintiff's First Amendment retaliation claim against Ivers, Cornell, Keiser, Reynolds, and Tronetti for the harassment subsequent to Plaintiff's withdrawal from the union; and (2) Plaintiff's First Amendment retaliation claim against Whitney

---

[11] The Court takes no view as to whether expedited discovery is warranted under the circumstances.

and Ivers arising from the sham resignation.  Plaintiff's *Janus* and First Amendment retaliation claims against Budinger are dismissed without prejudice.   All official-capacity claims are dismissed with prejudice, but Plaintiff may seek leave to add the County as a defendant with respect to his *Janus* and First Amendment retaliation claims.  Plaintiff's equal-protection, due-process, Section 1985(3), Section 1986, and Section 75 claims are dismissed with prejudice. Defendants' answers are due in accordance with the deadlines set forth in the Federal Rules of Civil Procedure.

The Clerk of Court is directed to forward copies of the Summons, Amended Complaint, and this Order to the United States Marshal Service for service upon Defendant Andrew Keiser without Plaintiff's payment, with unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor.

IT IS SO ORDERED.

Dated: April 9, 2024
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York